JJ

RECEIVED

NOV 30 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

2145183 ONTARIO INC., also d/b/a DYNAMIC FINANCIAL RESOLUTIONS INC., an Ontario corporation,

THE DYNAMIC FINANCIAL GROUP (U.S.A.) INC., a Delaware corporation,

R & H MARKETING CONCEPTS, INC., also d/b/a E Z Financial Solutions, a Florida corporation,

ALPHA FINANCIAL DEBT GROUP INC., a New Jersey corporation,

AMERICA FREEDOM ADVISORS INC., a New Jersey corporation,

THRILLER MARKETING, LLC, also d/b/a Easy Financial Solutions, a Florida limited liability company,

JOSEPH G. ROGISTER,

SEAN ROGISTER,

PHILIP N. CONSTANTINIDIS,

MICHAEL FALCONE,

FRANK PORPORINO JR.,

CHRISTOPHER M. HAYDEN,

Case No. 09C 7423

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

JUDGE GRADY

MAGISTRATE JUDGE ASHMAN

FILED

NOV 30 2009

NOV 30, 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DWAYNE J. MARTINS, and )
)
JOHN L. FRANKS JR., )
)
Defendants. )
)

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and (d) and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act,

the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

6. Defendant 2145183 Ontario Inc., also doing business as Dynamic Financial Resolutions Inc., is an Ontario, Canada corporation with its registered office at 1167 Caledonia Road, Toronto, Ontario. 2145183 Ontario Inc.'s principal place of business is 27 John Street W., PO Box 753, Bradford, Ontario. 2145183 Ontario Inc. transacts or has transacted business in this district and throughout the United States.

7. Defendant The Dynamic Financial Group (U.S.A.) Inc. is a Delaware corporation with its registered office at 108 W. 13th Street, Wilmington, Delaware. Dynamic Financial Group (U.S.A.) Inc.'s principal place of business is 159 Union Boulevard, Totowa, New Jersey. Dynamic Financial Group (U.S.A.) Inc. transacts or has transacted business in this district and throughout the United States.

8. Defendant R & H Marketing Concepts, Inc., also doing business as E Z Financial Solutions, is a Florida corporation with its principal place of business at 8413 Laurel Fair Circle, Suite 100, Tampa, Florida. R & H Marketing Concepts, Inc. transacts or has transacted business in this district and throughout the United States.

9. Defendant Alpha Financial Debt Group Inc. is a New Jersey corporation with its principal place of business at 159 Union Boulevard, Totowa, New Jersey. Alpha Financial Debt Group Inc. transacts or has transacted business in this district and throughout the United States.

10. Defendant America Freedom Advisors Inc. is a New Jersey corporation with its registered office at 159 Union Boulevard, Totowa, New Jersey. America Freedom Advisors Inc.'s principal place of business is 8413 Laurel Fair Circle, Suite 100, Tampa, Florida. America Freedom Advisors Inc. transacts or has transacted business in this district and throughout the United States.

11. Defendant Thriller Marketing, LLC, also doing business as Easy Financial Solutions, is a Florida limited liability company with its principal place of business at 4868 W. Gandy Boulevard, Tampa, Florida. Thriller Marketing, LLC transacts or has transacted business in this district and throughout the United States.

12. Defendant Joseph G. Rogister is the Director and Secretary of 2145183 Ontario Inc.; the Vice President of R & H Marketing Concepts, Inc.; the Vice President and Chief Operating Officer of Dynamic Financial Group (U.S.A.) Inc.; and the Vice President, Vice Chairman, Director, Secretary, and Chief Executive Officer of America Freedom Advisors Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Joseph G. Rogister, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13. Defendant Sean Rogister is the Chairman, Director, President, Treasurer, and majority shareholder of America Freedom Advisors Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority

to control, or participated in the acts and practices set forth in this Complaint. Defendant Sean Rogister, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14. Defendant Philip N. Constantinidis is the President of 2145183 Ontario Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Constantinidis, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15. Defendant Michael Falcone is the Treasurer of 2145183 Ontario Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Falcone, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

16. Defendant Frank Porporino Jr. is an officer of Alpha Financial Debt Group Inc. and America Freedom Advisors Inc., and the President of Dynamic Financial Group (U.S.A.) Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Porporino, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

17. Defendant Christopher M. Hayden is the President of R & H Marketing Concepts, Inc. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and

practices set forth in this Complaint. Defendant Hayden, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

18. Defendant Dwayne J. Martins is an officer of Thriller Marketing, LLC. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Thriller Marketing, LLC set forth in this Complaint. Defendant Martins, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19. Defendant John L. Franks Jr. is an officer of Thriller Marketing, LLC. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Thriller Marketing, LLC set forth in this Complaint. Defendant Franks, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

20. Defendants 2145183 Ontario Inc., Dynamic Financial Group (U.S.A.) Inc., R & H Marketing Concepts, Inc., Alpha Financial Debt Group Inc., and America Freedom Advisors Inc. (collectively, the "Dynamic Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. The Dynamic Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, business functions, office locations, and have commingled funds. Because the Dynamic Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Individual Defendants Joseph Rogister, Sean Rogister, Philip

Constantinidis, Michael Falcone, Frank Porporino Jr., and Christopher Hayden (collectively, the "Dynamic Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Dynamic Corporate Defendants that constitute the common enterprise. The Dynamic Corporate Defendants and the Dynamic Individual Defendants are collectively referred to herein as the "Dynamic Defendants."

**COMMERCE**

21. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS PRACTICES**

22. Since at least 2007, the Dynamic Defendants have telemarketed credit card interest rate reduction services to consumers nationwide in the United States and in Canada.

23. Beginning sometime in 2009, Thriller Marketing, LLC also began telemarketing these credit card interest rate reduction services to consumers in the United States and Canada. The Dynamic Defendants and Thriller Marketing, LLC have employed the same deceptive practices in selling these services, as described below.

24. In many instances, Defendants' telemarketing calls are initiated using a telemarketing service that delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling." The prerecorded messages often offer consumers the opportunity to secure lower credit card interest rates and instruct consumers to press a number on their phone to be connected to a live representative. Defendants also market their program via the Internet on several websites, including www.dynamicexperts.com and www.ezfinancial.info.

25. During the telemarketing calls, Defendants claim to have the ability to substantially reduce consumers' credit card interest rates. In many instances, Defendants claim that they can obtain very low interest rates, such as 4 to 7 percent, for consumers. Defendants also often claim that their interest rate reduction services will provide substantial savings to consumers, typically $2500 or more in a short time, and will enable consumers to pay off their debt much faster, typically three to five times faster.

26. In numerous instances, Defendants guarantee that if consumers do not save the promised amount of $2500 or more in a short time as a result of lowered credit card interest rates, consumers will receive a full refund of the cost of Defendants' services.

27. Defendants sometimes also tell consumers that if they want to cancel Defendants' services, Defendants will provide full refunds for any reason within thirty days of the date of purchase.

28. Defendants charge consumers a fee ranging from $495 to $1995 for their services. Defendants typically place this charge on consumers' credit cards immediately following the telemarketing calls. Defendants represent that the amount of the fee will be quickly offset by savings achieved through reduced interest rates. On information and belief, starting sometime in 2009, all of Defendants' credit card charges have been processed through an account belonging to Thriller Marketing, LLC.

29. After consumers pay Defendants' fee, Defendants usually send them a package containing forms for the consumer to complete and return listing all of the consumer's credit card account information.

30. In some instances, after consumers complete and return Defendants' forms, Defendants initiate three-way telephone calls with the consumers and the customer service

department of the relevant credit card companies that consumers provided on the forms. These three-way telephone calls merely consist of Defendants verbally requesting that the credit card companies reduce the consumers' credit card interest rates. This is a task that consumers could easily perform themselves. The credit card companies typically decline the request, and the call ends. These three-way telephone calls are often the total extent of Defendants' credit card interest rate reduction services.

31. After consumers complete and return Defendants' forms, Defendants sometimes also offer consumers a credit card with a low introductory rate, and instruct the consumers to transfer the balances from their high-interest rate credit cards to the low introductory rate card. However, the introductory rate on the card being offered by the Defendants is only low for a limited amount of time, and Defendants do not promise that the permanent rate on the card will be lower than the rate on the consumers' current credit cards. In fact, in numerous instances, the rate on the new card could be higher. Consumers could easily open up new credit cards with low introductory rates, and transfer their balances to the new cards, on their own.

32. In numerous instances, Defendants fail to provide consumers with the significant reductions in credit card interest rates and minimum $2500 savings that were promised during the initial telephone calls, and they typically fail to provide any reduction in consumers' credit card interest rates at all. Consequently, consumers were not able to pay their credit card debts faster than without Defendants' program.

33. Despite Defendants' failure to deliver on the promises made to consumers, Defendants rarely refund the fee charged to consumers for purchasing Defendants' credit card interest rate reduction services.

34. While telemarketing their program, the Dynamic Defendants, directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked the Dynamic Defendants not to call them again. In some instances, the Dynamic Defendants, directly or through one or more intermediaries, also "spoof" their calls by transmitting phony Caller ID information so that call recipients do not know the source of the calls.

35. Since at least 2007, the Dynamic Defendants, directly or through one or more intermediaries, have made numerous outbound telemarketing calls in which they failed to connect the call to a sales representative within two (2) seconds of the call recipient's completed greeting. Instead of connecting the call to a sales representative, the Dynamic Defendants, directly or through their telemarketers, have delivered a prerecorded voice message to the call recipient.

36. In numerous instances, the Dynamic Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services. In numerous instances since December 1, 2008, the Dynamic Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures.

37. Since at least 2009, Defendants Thriller Marketing, LLC, Dwayne J. Martins, and John L. Franks Jr. (collectively, the "Thriller Defendants") have provided substantial assistance and support to the Dynamic Defendants, even though the Thriller Defendants knew or

consciously avoided knowing that the Dynamic Defendants were engaged in violations of Sections 310.3(a)(2)(iii) and 310.3(a)(2)(iv) of the TSR.

## VIOLATIONS OF THE FTC ACT

38. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

39. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. § 45(a).

## COUNT ONE

### Misrepresentations in Violation of Section 5

40. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' credit card interest rate reduction program, Defendants have represented, directly or indirectly, expressly or by implication, that:

A. Defendants will substantially lower consumers' credit card interest rates in all or virtually all instances;

B. Defendants will save consumers thousands of dollars in a short time in all or virtually all instances as a result of lowered credit card interest rates;

C. Defendants will enable consumers to pay off their debts much faster, typically three to five times faster, in all or virtually all instances, as a result of lowered credit card interest rates;

D. Defendants will provide full refunds if consumers do not save thousands of dollars in a short time as a result of lowered credit card interest rates; and

E. Defendants will provide full refunds for any reason within thirty days of the date of purchase.

41. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 40 of this Complaint,

A. Defendants did not substantially lower consumers' credit card interest rates;

B. Defendants did not save consumers thousands of dollars in a short time as a result of lowered credit card interest rates;

C. Defendants did not enable consumers to pay off their debts much faster, typically three to five times faster as a result of lowered credit card interest rates;

D. Defendants did not provide full refunds when consumers did not save thousands of dollars in a short time as a result of lowered credit card interest rates; and

E. Defendants did not provide full refunds for any reason within thirty days of the date of purchase.

42. Therefore, Defendants' representations as set forth in Paragraph 40 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**THE TELEMARKETING SALES RULE**

43. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The

FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

44. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone calls" to consumers, as those terms are defined in the TSR, 16 C.F.R. § 310.2(u), (z), (bb), and (cc).

45. The TSR prohibits telemarketers and sellers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

46. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

47. The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

A. The identity of the seller;

B. That the purpose of the call is to sell goods or services; and

C. The nature of the goods or services.

16 C.F.R. § 310.4(d)(1), (2), and (3).

48. Since December 1, 2008, the TSR has prohibited a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message unless the message promptly discloses:

A. The identity of the seller;

B. That the purpose of the call is to sell goods or services; and

C. The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

49. The TSR also prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

50. The TSR also prohibits sellers and telemarketers from "abandoning" any outbound telephone calls. 16 C.F.R. § 310.4(b)(1)(iv). An outbound telephone call is "abandoned" if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting. *Id.*

51. In addition, the TSR, as amended in 2003, establishes a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

52. Since October 17, 2003, sellers and telemarketers have been prohibited from calling numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

53. Since January 29, 2004, sellers and telemarketers have been prohibited from failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. 16 C.F.R. § 310.4(a)(7).

54. It is a violation of the TSR for any person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that

the seller or telemarketer is engaged in any practice that violates Sections 310.3(a), (c) or (d), or 310.4 of the Rule. 16 C.F.R. § 310.3(b).

55. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT TWO

### Misrepresentations in Violation of the TSR

56. In numerous instances, in the course of telemarketing goods and services, Defendants have misrepresented, directly or by implication, that:

A. Defendants will substantially lower consumers' credit card interest rates in all or virtually all instances;

B. Defendants will save consumers thousands of dollars in a short time in all or virtually all instances as a result of lowered credit card interest rates; and

C. Defendants will enable consumers to pay off their debts much faster, typically three to five times faster, in all or virtually all instances, as a result of lowered credit card interest rates;

57. Defendants' acts and practices, as described in Paragraph 56 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

## COUNT THREE

### Refund Misrepresentations in Violation of the TSR

58. In numerous instances, in the course of telemarketing goods and services, Defendants have misrepresented, directly or by implication, that:

A. Defendants will provide full refunds if consumers do not save thousands of dollars in a short time as a result of lowered credit card interest rates; and

B. Defendants will provide full refunds for any reason within thirty days of the date of purchase.

59. Defendants' acts and practices, as described in Paragraph 58 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

## COUNT FOUR

### Assisting and Facilitating Violations of the TSR

60. In numerous instances, the Thriller Defendants have provided substantial assistance or support to the Dynamic Defendants, including, but not limited to payment processing services, when the Thriller Defendants knew or consciously avoided knowing that the Dynamic Defendants were misrepresenting, directly or by implication, material information in the sale of their goods and services, in violation of the TSR, 16 C.F.R. § 310.3(a)(2)(iii) or § 310.3(a)(2)(iv).

61. The Thriller Defendants' substantial assistance or support as alleged in Paragraph 60 is a deceptive telemarketing act or practice that violates the TSR, 16 C.F.R. § 310.3(b).

**COUNT FIVE**

**Violating the National Do Not Call Registry**

62. In numerous instances, in connection with telemarketing, the Dynamic Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

**COUNT SIX**

**Failing to Honor Do Not Call Requests**

63. In numerous instances, in connection with telemarketing, the Dynamic Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the Dynamic Defendants, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

**COUNT SEVEN**

**Abandoning Calls**

64. In numerous instances, in connection with telemarketing, the Dynamic Defendants have abandoned, or caused a telemarketer to abandon, an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iv).

**COUNT EIGHT**

**Failing to Transmit Caller Identification**

65. In numerous instances, in connection with telemarketing, the Dynamic Defendants have failed to transmit, or have caused telemarketers to fail to transmit, the telephone

number and name of the telemarketer or of the Dynamic Defendants to any caller identification service in use by a recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(7).

**COUNT NINE**

**Failing to Make Required Oral Disclosures**

66. In numerous instances, in the course of telemarketing goods and services, the Dynamic Defendants have made or caused telemarketers to make outbound telephone calls in which the telemarketer failed to disclose promptly and in a clear and conspicuous manner to the person receiving the call:

a. the identity of the seller;

b. that the purpose of the call is to sell goods or services; or

c. the nature of the goods or services.

67. The Dynamic Defendants' practice as alleged in Paragraph 66 is an abusive telemarketing practice that violates the TSR, 16 C.F.R. § 310.4(d).

**COUNT TEN**

**Initiating Unlawful Prerecorded Messages**

68. In numerous instances, on or after December 1, 2008, in the course of telemarketing goods and services, the Dynamic Defendants have initiated, or caused a telemarketer to initiate, outbound telephone calls delivering prerecorded messages that, in violation of § 310.4(b)(1)(v)(B)(*ii*), do not promptly disclose the identity of the seller, that the purpose of the call is to sell goods or services, or the nature of the goods or services.

## CONSUMER INJURY

69. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts and practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

70. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violations of any provision of law enforced by the FTC.

71. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

1. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

2. Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

3. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

4. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

WILLARD K. TOM
General Counsel

DATED: November 30, 2009

[signature]

MARISSA J. REICH
JOANNIE T. WEI
STEVEN M. WERNIKOFF
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]